**UNITED STATES of America, Plaintiff,**

v.

**Myles Joseph CONNOR, Jr., Defendant.**

**Nos. 89–30097, 89–30101.**

United States District Court,
C.D. Illinois,
Springfield Division.

July 20, 1990.

Byron G. Cudmore, First Asst. U.S. Atty., Springfield, Ill., for plaintiff.

Gregory D. Collins, Springfield, Ill., for defendant.

## OPINION

RICHARD MILLS, District Judge:

"We should understand punishment as a kind of mirror image of praise. If praise expresses gratitude and approbation, punishment expresses resentment

and reprobation. If praise expresses what the political community admires and what unites it, punishment expresses what the community condemns and what threatens it. Punishment, like praise, publicly expresses our determination of what people deserve." [1]

This is the story of a drug dealer, a fence for stolen property, and an extremely intelligent man.

Unfortunately for society, they are one and the same person.

Myles Connor deserves a great deal of punishment and very little praise.

Defendant Connor came before this Court for sentencing on a variety of charges. The Court determined the defendant's guideline range to be 92–115 months. We further determined, however, that this was an appropriate case for an upward departure. Thus, the Court sentenced the defendant to a term of 240 months—20 years.

In this opinion we articulate the numerous and substantial reasons for the upward departure.

## I. FACTS

On December 6, 1988, the defendant met with an undercover FBI agent at the Ramada Inn in Bloomington, Illinois. The two struck a deal whereby the defendant agreed to sell the undercover agent a stolen Simon Willard grandfather clock. The purchase price was $10,000. The clock was stolen from the estate of the Woolworth family in Winthrop, Maine, in 1973. Its current market value is between $15,000–20,000. The defendant also indicated that he was in the possession of at least 12 Japanese works of art that he would be willing to sell to the undercover agent. The defendant further stated that he would contact some of his associates and get them working on obtaining other stolen items that may be of interest to the agent.

On January 12, 1989, the undercover agent again met with the defendant in Bloomington. The defendant offered the agent three paintings that he said had been stolen from the Meade Gallery at Amherst College, Amherst, Massachusetts. The defendant's asking price was $60,000 and he stated that the paintings had a value in excess of $125,000.

Also during this meeting, the defendant and the undercover agent negotiated for the defendant to supply cocaine to the agent for distribution in the Bloomington area. The defendant was to supply two kilos of medium quality cocaine every week for distribution to the students at the University of Illinois and one kilo of high grade cocaine every 3 weeks for distribution to the agent's preferred customers. The defendant stated that he would have no problem supplying these amounts once he raised enough capital for the first shipment. The agent also purchased 100 hits of lysergic acid diethylamide (LSD) which had a total weight of .562 grams and 93 tylox pills which contained 29.57 grams of acetaminophen. The purchase price for these drugs was $1,700.

On January 11, 1989, the defendant transported two stolen paintings from the State of Kentucky and gave the paintings to the undercover agent as collateral for a $10,000 loan to the defendant. The paintings, "St. John the Baptist" by Pieter Lastman and "Interior of the Nieuwe Kerk, Delft" by Henrick Cornelisz, were stolen in 1975 from the Meade Art Gallery at Amherst College. "St. John the Baptist" has a current market value of $160,000 and "Interior of the Nieuwe Kerk, Delft" has a current market value of $250,000.

On March 1, 1989, the undercover agent and a confidential source met with the defendant at the Logan International Airport in East Boston, Massachusetts. The undercover agent gave the defendant $24,000 with the understanding that the money was to be used to purchase cocaine. The defendant stated that he and the confidential source would fly to Ft. Lauderdale, Florida, purchase a kilo of cocaine, and deliver it to the agent in Bloomington, Illinois, the following week.

---

1. Brubaker, *In Praise of Punishment,* 97 Public Interest 44, 46 (1989).

The defendant and the confidential source proceeded to Ft. Lauderdale, purchased the cocaine, and returned to Illinois. The defendant was arrested upon his return. Government agents seized 950.62 grams of 96% pure cocaine and 5.51 grams of 92% pure cocaine from the defendant.

After the defendant was arrested and charged, the magistrate ordered that he be detained pending trial. The defendant was held in the Menard County Jail in Petersburg, Illinois.

On June 11, 1989, the United States Marshal's Service received information from a confidential informant indicating that the defendant and another prisoner, Lester Prier, had acquired some hacksaw blades and were planning a jail break. Federal agents met with Prier and, after having been advised of his constitutional rights, Prier stated that Margo Konces sent Connor four hacksaw blades concealed in a book. (Although Konces was involved in the escape attempt, it was later determined that it was not she who sent Connor the saw blades).

The agents searched the cells of Connor, Prier, and another prisoner, Michael Wright. The search turned up four hacksaw blades and a hardbound book containing a hollowed out area in which the blades could be concealed. The agents also observed that a four to five inch cut had been made in the steel ceiling of Prier's cell and that the head of a bolt on an exhaust duct had been sawed off.

In an effort to apprehend Connor's outside accomplices in the escape attempt, the agents decided to make it appear as if the escape had been successful. Thus, at the direction of federal agents the confidential informant telephoned Margo Konces in Massachusetts and identified himself as an inmate who had escaped with Connor. Konces inquired as to how she could be of help. Upon being informed that the supposedly escaped prisoners needed someone to transport them, Konces informed the confidential informant that she would recruit Suzanne King, the defendant's girlfriend. Plans were made to have King meet the prisoners at the Menard County fairgrounds.

On June 13, 1989, an undercover United States Marshal posing as an escaped prisoner met Suzanne King at the Menard County Fairgrounds. King informed the marshal that she brought a .38 caliber handgun, hair dye, razors, and clothes for the escaped prisoners and was taking them to Kentucky. The marshal then placed King under arrest and Margo Konces was arrested the next day.

Margo Konces eventually pleaded guilty to conspiring to aid and abet the defendant in his attempted escape. Suzanne King pleaded guilty to conspiring to conceal an escaped prisoner.

On November 22, 1989, Myles Connor also entered a plea of guilty to the charges against him. Specifically, he pleaded guilty to two counts of transportation of stolen property, two counts of distribution of a controlled substance, one count of possession with intent to distribute, one count of conspiracy to distribute, and one count of attempted escape. The defendant also pleaded guilty to a one count information (received as a transfer under Fed.R. Crim.P. 20 from the District of Massachusetts) charging him with possession with intent to distribute a controlled substance.

The United States Probation Office prepared a detailed presentence report and this case came on for sentencing on July 16, 1990.

## II. LAW AND ANALYSIS

■ The United States Probation Office identified the defendant's adjusted offense level as 24 and his criminal history category as V. This correlated to a sentencing guideline range of 92–115 months. The Court found, however, that this case involves aggravating circumstances of a kind, and to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines. The Court further found that the defendant's criminal history category did not adequately reflect the seriousness of his past criminal conduct or the likelihood that he will commit other crimes. Thus, the Court found that an increase in the offense level

to 32 and an increase in the criminal history category to VI was appropriate. This gave a Guideline range of 210–262 months. The Court sentenced the defendant to 240 months.

The conclusion that this case warrants an upward departure of this magnitude is based on five factors. *First,* were it not for the fact that several of the defendant's prior felony convictions were excluded because of age or because they were related cases, the defendant would be sentenced as a career offender under § 4B1.1. *Second,* because the sentences the defendant received on those convictions were not used in computing his criminal history category, the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that he will commit other crimes. *Third,* the similarity between this conviction for interstate transportation of stolen property and the 1975 conviction for sale or receipt of stolen goods shows that the defendant has demonstrated the need for greater deterrence. *Fourth,* without an upward departure the defendant would receive absolutely no punishment for his attempt to escape. *Finally,* the Court considers the involvement of the .38 caliber handgun in the attempted escape to be a critical aggravating factor warranting departure.

### A. Career Offender

A defendant is a career offender if: (1) the defendant was at least 18 years old at the time of the instant offense; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense. A career offender's criminal history category is always VI. Guidelines § 4B1.1.

"Two prior felony convictions" means that the defendant committed the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense and that the sentences are counted separately under Part A of Chapter Four of the Guidelines. § 4B1.2(3). Under the version of § 4B1.2 that was in effect at the time the defendant committed the offenses of conviction, the commentary stated that a crime of violence is an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or any other offense that is a felony and that by its nature involves a substantial risk that physical force against the person or property of another may be used in committing the offense.

The defendant satisfies all but one of the requirements for career offender status. He was at least 18 years old at the time of the offenses involved in this case. Four of the offenses to which he pleaded guilty are felonies involving controlled substances. The defendant evades career offender status, however, because although he has at least two prior felony convictions for crimes of violence, only one of the sentences is counted separately. Thus, he does not have *two* prior violent felony convictions for which the sentences are counted separately under Part A of Chapter 4.

On February 27, 1967, the defendant pleaded guilty to assault with intent to murder and was sentenced to 12–20 years in prison. The defendant, armed with a revolver, assaulted an individual with intent to murder him. For this conviction the defendant received three criminal history points. This is one felony conviction for which the sentence is counted separately.

The same day the defendant pleaded guilty to assault and battery by means of a dangerous weapon and was sentenced to 7–10 years in prison to run concurrent with his other sentence. This sentence was not counted separately in arriving at the defendant's criminal history score because it was a related case.

Also on February 27, 1967, the defendant pleaded guilty to two counts of assault and battery by means of a dangerous weapon and three counts of assault by means of a dangerous weapon. In that case the defendant committed assault and assault and battery on five individuals while armed with a revolver and a dagger. He was

sentenced to 3–5 years in prison to run concurrent to his previous other sentences. Again, this sentence was not counted separately because it was determined to be a related case.

On April 20, 1971, the defendant pleaded guilty to assault and battery and was sentenced to 1–2 years to run concurrent to his other sentences. The defendant was arrested for breaking, entering, and larceny in the night time for stealing antiques from a private home. He assaulted the deputy sheriff who arrested him. Seven days later he assaulted another deputy sheriff during an escape attempt. The sentence the defendant received was not counted separately and was excluded because of age pursuant to § 4A1.2(e).

■ Although the defendant is a recidivist and has made a career out of crime, he does not qualify as a career offender under Guidelines § 4B1.1 because of the way Part A of Chapter 4 counts sentences to determine a criminal history category. This does not prohibit this Court, however, from considering those sentences when deciding to depart upward.

If any one of the sentences for the prior violent felonies that were not counted had been counted separately under Part A of Chapter 4, the defendant would qualify as a career offender under § 4B1.1. Because at least one of the offenses of conviction carries a statutory maximum of 40 years, the defendant's offense level would be 34. A career offender's criminal history category in every case is Category VI. An offense level of 34 with a criminal history category of VI gives a guideline range of 262–327 months.

This factor alone justifies the Court's sentence. The defendant is the archetype of a career criminal but does not meet the technical requirements. If he met the last requirement for career offender status he would have faced 327 months in prison. In light of this, an offense level of 32, a criminal history category of VI, and a sentence of 240 months is not unreasonable.

## B.  Inadequate Criminal History

Apart from the above discussion of career offender status, the Court finds that a criminal history category of V does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that he will commit other crimes. This is based on the fact that the defendant has several prior sentences that were not used in computing his criminal history.

In 1967, in case No. 23595, the defendant was convicted of assault and battery by means of a dangerous weapon. He was sentenced to 7–10 years. This sentence received no criminal history points, however, because the case was related to one for which the defendant received three criminal history points. Also in 1967, in case Nos. 23596, 23597, 23598, 23599, 23616, 23617, and 23618 the defendant was convicted of two counts of assault and battery by means of a dangerous weapon, one count of unlawfully carrying a dagger, one count of unlawfully carrying a firearm, and three counts of assault by means of a dangerous weapon. He was sentenced to 3–5 years. Again, this sentence received no criminal history points because it was imposed in related cases.

In 1971, the defendant was convicted of assault and battery and sentenced to 1–2 years. This sentence was excluded because of age and received no criminal history points. In 1975, the defendant was convicted of possession of a dangerous weapon and was sentenced to 1–2 years. This sentence received no criminal history points because it was related to another conviction for possession of a dangerous weapon for which the defendant received 3 criminal history points.

■ It is proper for the Court to consider sentences excluded from the defendant's criminal history as a factor warranting upward departure. Guidelines § 4A1.2 Application Note 3 states that there may be instances in which the definition of "related cases" is overly broad and results in a criminal history score that underrepresents the seriousness of the defendant's criminal history and the danger he presents to the public. Note 3 further states that in such

cases the court should consider whether departure is warranted.

In addition, Guidelines § 4A1.3(a) gives "prior sentence(s) not used in computing the criminal history category" as an example of information that may indicate that a defendant's criminal history category is inadequate. Also, Guidelines § 4A1.2 Application Note 8 clearly contemplates that in some situations sentences excluded from the criminal history determination could be used as reason for upward departure.

The United States Court of Appeals for the Seventh Circuit has held that a sentence excluded from a defendant's criminal history score is a proper factor on which to rely to support upward departure. In *United States v. Williams*, 901 F.2d 1394 (7th Cir.1990), the court discussed Guidelines § 4A1.2 Application Note 3 and affirmed the district judge's use of previous consolidated sentences as a reason to depart upward. Although this Court could find no Seventh Circuit case in which the court approved the use of sentences excluded by reason of age, courts in the 5th, 6th, 8th, and 10th have held that a district court may consider these sentences in deciding whether to depart upward. *See United States v. Lopez*, 871 F.2d 513 (5th Cir. 1989); *United States v. Elmendorf*, 895 F.2d 1415 (6th Cir.1990); *United States v. Pitman*, 888 F.2d 128 (6th Cir.1989); *United States v. Lang*, 898 F.2d 1378 (8th Cir. 1990); *United States v. Jackson*, 903 F.2d 1313 (10th Cir.1990).

Because several of the defendant's prior sentences were excluded from his criminal history score, a criminal history category of V underrepresents the seriousness of his past criminal conduct and the likelihood that he will commit crimes in the future. Thus, the Court is justified in departing upward and increasing the defendant's criminal history category to VI.

### C. Similar Offenses

The defendant is a fence. He is a broker in stolen goods, mainly stolen antiques and art. In 1975 he was convicted of sale or receipt of stolen goods and was sentenced to four years' imprisonment. In the instant case, he pleaded guilty to two counts of interstate transportation of stolen property. The repeat nature of his offenses justifies an upward departure based on inadequate criminal history level.

"Rationally, if a defendant has been convicted for the same offense more than once, he has demonstrated the need for greater sanctions to deter him from committing that same crime again—greater sanctions than might be required for a defendant who has never been convicted of a similar offense." *United States v. Schmude*, 901 F.2d 555, 559 (7th Cir.1990). *See also United States v. Williams*, 901 F.2d 1394 (7th Cir.1990). Furthermore, the Guidelines specifically contemplate that similar criminal conduct be used as a basis for upward departure. Guideline § 4A1.3(e) lists "[p]rior similar adult criminal conduct not resulting in a criminal conviction" as a reason for upward departure.

The defendant's previous punishment for dealing in stolen property has not deterred him from returning to the same course of conduct. Thus, he has demonstrated the need for more severe punishment. The similarity between his 1975 conviction for sale or receipt of stolen property and this conviction for interstate transportation of stolen property justifies an upward departure based on inadequate criminal history level.

### D. Attempted Escape

The defendant pleaded guilty to one count of attempted escape. His total offense level reflected no increase based on the escape nor did he receive any criminal history points for the escape. The Court finds that this justifies an upward departure.

Pursuant to Guideline § 3D1.2, all counts involving substantially the same harm are grouped together. Thus, the defendant's drug related charges were grouped together and carried an adjusted offense level of 26.[2] The defendant's stolen property

---

**2.** The defendant was given a two level reduction for acceptance of responsibility which resulted in a total offense level of 24.

charges were grouped together and carried an adjusted offense level of 17. The attempted escape charge was grouped by itself and it carried an adjusted offense level of 13.

Based on Guideline § 3D1.4, the combined offense level is determined by starting with the offense level applicable to the group with the highest offense level, in this case 26. Then, the offense level is increased by the amount indicated in the table listed in § 3D1.4. Guideline § 3D1.4(c) states, however, that any group that is nine or more levels below the group with the highest offense level is disregarded. Thus, the total offense level of 26 was not increased for the escape or the stolen property offenses.

Additionally, the defendant was not given any criminal history points for the escape. Normally, a defendant convicted of escape receives three criminal history points under Guideline § 4A1.1(d)–(e). *United States v. Jimenez*, 897 F.2d 286 (7th Cir.1990). Subsections (d) and (e) apply only to persons who escape while under a criminal justice sentence. The defendant attempted to escape from *pre-trial detention.* Therefore, he received no criminal history points for the escape.

The Court finds that the attempted escape from pre-trial detention, coupled with the lack of increase in total offense level for the escape, is an aggravating factor warranting an upward departure. The Sentencing Commission appears to have contemplated that in some cases, the approach to determining the total combined offense level adopted in § 3D1.4 will be inadequate. In the Background Commentary to § 3D1.4, the Commission states that "[i]n unusual circumstances, the approach adopted in [§ 3D1.4] could produce adjustments for the additional counts that are inadequate[.] If there are several groups and the most serious offense is considerably more serious than all of the others, there will be no increase in the offense level resulting from the additional counts.... Situations in which there will be inadequate scope for ensuring appropriate additional punishment for the additional

crimes are likely to be unusual and can be handled by departure from the guidelines."

This is precisely the situation present in this case. Because the defendant's offense level for the drug charges is so high, he receives no punishment for the attempted escape. An individual who attempts to escape from pre-trial detention, however, demonstrates utter disdain for our criminal justice system. He also creates the potential for harm to the public arising out of his escape. Such an individual should receive some punishment for his action. In this case, the only way that can be achieved is through upward departure. An increase in the offense level to 32 is warranted.

As the Court has also noted, one convicted of escape normally receives three criminal history points but this is true only if the escape is from a criminal justice sentence. It does not apply to escape from pre-trial detention, or to one who escapes from police custody after a lawful arrest, or to one who aids and abets an escape. As the court noted in *Jimenez,* the Guidelines can rationally choose to punish a prisoner who escapes a sentence more severely than an outside person who helps in the escape or a person who escapes from police custody. We do not think, however, that the Guidelines could have meant to punish a prisoner who escapes a sentence more severely than a prisoner who escapes from pre-trial detention. There would be no rational basis for this distinction. Both escapees show the same contempt for the criminal justice system. In addition, the potential for harm and violence resulting from either escape is the same. Based on this, the Court finds that the defendant's criminal history category underrepresents the seriousness of his criminal conduct and the likelihood that he will commit future crimes. An upward departure to criminal history category VI is warranted.

### E. Involvement of the Gun

Finally, the Court considers the involvement of the .38 caliber revolver in the escape attempt to be an aggravating factor warranting an upward departure.

Margo Konces and Suzanne King were the defendant's accomplices in the attempt-

ed jail break. The defendant sent Konces a letter setting forth the method he wanted her to use to get the saw blades into the jail. The letter also included a drawing depicting how the blades should be hidden in the books Konces was to send. Konces passed this information on to a third party. She also telephoned King and asked her to transport the escaped prisoners. King agreed to do so and armed herself with a .38 caliber revolver to aid her in her task.

The policy statement contained in Guidelines § 5K2.6 states that if a weapon or dangerous instrumentality was used or possessed in the commission of an offense, the Court may increase the sentence above the authorized guideline range. The defendant organized the escape attempt from his jail cell. Although he did not physically possess the gun himself, he certainly could have foreseen that one of those he involved in the escape might possess a gun. Additionally, King possessed the gun in furtherance of the escape attempt. Thus, it is proper to consider the gun as an aggravating factor to enhance the defendant's sentence.

### III. CONCLUSION

Myles Connor has made a career out of crime. An offense level of 24 and a criminal history category of V with the corresponding guideline range of 92–115 months is simply insufficient. The offense level underrepresents the seriousness of the defendant's crime and the criminal history category does not adequately take into account the seriousness of the defendant's past criminal conduct and the likelihood that he will commit crimes in the future. The Court has identified and discussed five aggravating factors not taken into account by the Sentencing Commission in formulating the Guidelines. These factors justify a substantial upward departure from the defendant's guideline range.

*Ergo*, the Court finds that the defendant's offense level was properly increased to 32 and his criminal history category increased to VI. This corresponds to a guideline range of 210–262 months. The Court's sentence of 240 months imprison-ment is completely justified under the Guidelines.