UNITED STATES of America,
Plaintiff–Appellee,

v.

Myles J. CONNOR, Jr., Defendant–
Appellant.

Nos. 90–2669, 90–2687.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 15, 1991.

Decided Dec. 10, 1991.

Byron G. Cudmore, Asst. U.S. Atty. (argued), Office of the U.S. Atty., Springfield, Ill., for plaintiff-appellee.

Gregory Collins (argued), Stratton, Dobbs, Nardulli & Lestikow, Springfield, Ill., for defendant-appellant.

Before WOOD, Jr., and KANNE, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

FAIRCHILD, Senior Circuit Judge.

Myles Connor pled guilty to one count of possession of cocaine with intent to distribute; one count of conspiracy to distribute over 500 grams of cocaine; two counts of distribution of controlled substances; two counts of interstate transportation of stolen property; and one count of attempted escape. This appeal concerns Connor's sentence for these offenses. Under the sentencing guidelines, the district court initially determined an adjusted offense level of 24 (26 minus 2 for acceptance of responsibility) and a criminal history category of V. Accordingly, the sentencing table would yield a range of 92–115 months of imprisonment. The district court, however, decided to depart upwards and sentenced Connor to 240 months of imprisonment. *United States v. Connor*, 743 F.Supp. 582 (C.D.Ill.1990). On appeal, Connor contends that he had a criminal history category of IV, that the district court erred by departing from the guidelines range or, in any event, that the degree of departure is unreasonable, and that the sentence must be vacated because the district judge relied on materials he received which were not made available to Connor.

## CONDUCT UNDERLYING THE OFFENSES

On December 6, 1988, Connor met with an undercover FBI agent and agreed to sell the agent a stolen grandfather clock for $10,000. Connor also indicated that he possessed other stolen works of art that he would be willing to sell. On January 11, 1989, Connor gave the agent two paintings as collateral for a $10,000 loan.

On January 12, 1989, the agent again met with Connor, and Connor agreed to sell the agent two kilograms of cocaine per week and a third kilogram every three weeks. During the meeting, the agent purchased 100 hits of lysergic acid diethylamide (LSD) and 93 tylox pills from Connor.

On March 1, the agent met Connor and gave him $24,000 to purchase cocaine. The plan was for Connor to fly to Florida, where he would purchase the cocaine for delivery to the agent the following week. The plan was successfully completed, and Connor was arrested upon his return to

Illinois in possession of a kilogram of cocaine.

The magistrate ordered that the defendant be held at the Menard County Jail pending trial. On June 11, 1989, the United States Marshal's Service received a letter from a confidential informant indicating that Connor and another prisoner, Lester Prier, had acquired some hacksaw blades and were planning to escape. Prier told federal agents that Margo Konces had sent Connor the hacksaw blades.

In an effort to apprehend Connor's accomplices in the escape attempt, agents made it appear as if the escape had been successful. The confidential informant placed a call to Margo Konces in Massachusetts on June 13 and told her that he had escaped with Connor. The confidential informant told Konces that the escaped prisoners needed transportation, and Konces stated that she would recruit Connor's girlfriend, Susanne Marie King. Plans were made to have King meet them at the Menard County fairgrounds. At the fairgrounds, an undercover agent posing as one of the escaped prisoners approached King, and King indicated that she had brought a .38 caliber handgun.

## SENTENCING

In order to determine Connor's offense level under the guidelines, the probation officer separated the offenses into groups: the interstate transportation of stolen property counts; the cocaine counts; and the attempted escape count. Applying § 3D1.4 of the guidelines, the offense level for the cocaine counts (26) is the combined offense level for all counts. The district court reduced the offense level to 24 for acceptance of responsibility. U.S.S.G. § 3E1.1.

In order to determine Connor's criminal history category, the probation officer reported on Connor's extensive criminal record. On February 27, 1967, Connor was convicted by a Massachusetts court of assault with intent to murder—armed. He was sentenced to 12–20 years. Although the sentence was imposed more than fifteen years before the commencement of the instant offense, his incarceration extended into the fifteen year period. U.S.S.G. § 4A1.2(e)(1). This sentence was counted 3 points in computing criminal history. On the same date he was convicted by the same court of assaults and weapons offenses and sentenced to concurrent terms. These were related cases and for that reason were not counted. U.S.S.G. § 4A1.2(a)(2). The conduct occurred in May, 1966, when Connor was 23.

On April 20, 1971, Connor was sentenced by a Maine court to 1–2 years concurrent with the 1967 sentence. The offense was assault and battery and occurred in January, 1966, at age 23. The sentence was not counted in the criminal history because it was imposed and his imprisonment was completed more than fifteen years before the commencement of the present offense. U.S.S.G. § 4A1.2(e)(1).

On December 2, 1975, Connor was sentenced by a federal district court in Massachusetts to 4 years, concurrent with the 1967 sentence. The presentence report refers to the charge as sale or receipt of stolen goods, 18 U.S.C. § 2315. We do not have the indictment before us, but the charge under that section must have been receipt and possession, and perhaps sale, of goods of the value of $5000 or more, which had crossed a state boundary after being stolen, and which he knew to have been stolen. He had negotiated sale of the goods (stolen art works) to undercover agents and was arrested July 18, 1974, when about to make delivery. The sentence was counted 3 points.

On April 20, 1976, Connor was sentenced by a Massachusetts court to 1–2 years concurrent with the existing sentence. The offense was possession of a dangerous weapon, a switchblade knife, on July 18, 1974, at the time of his arrest for the federal offense. This sentence was counted 3 points, and defendant argues that it should not have been counted because the case was related to the federal case. U.S.S.G. § 4A1.2(a)(2). On the same date Connor received a similar sentence for carrying a pistol on the same occasion. This sentence was not counted.

On October 30, 1985, Connor was sentenced by a Massachusetts court to one year for failure to appear. This sentence was counted two points. U.S.S.G. § 4A1.1(b). On November 12, 1986, he was fined for possession of cocaine, and this sentence counted one point. U.S.S.G. § 4A1.1(c). Several fines for traffic offenses were not counted. U.S.S.G. § 4A1.2(c). Connor received a total of 12 criminal history points which placed him in category V. If the state sentence for possession of the knife had not been counted, he would have been in category IV.

## DISCUSSION

### A. Sentences in Related Cases Were Erroneously Counted Separately

█ Under the sentencing guidelines, the criminal history category is determined by adding three points "for each prior sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.1(a). However, "[p]rior sentences imposed in related cases are to be treated as one sentence for purposes of the criminal history." U.S.S.G. § 4A1.2(a)(2) (1990). The guidelines do not define "related cases," but the commentary says, "Cases are considered related if they (1) occurred on a single occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2(a)(2), comment. (n. 3) (1990). We give substantial weight to the commentary. *United States v. Valencia,* 913 F.2d 378, 384 (7th Cir.1990).

We review the district court's application of the guidelines under a due deference standard. 18 U.S.C. § 3742(e). This court has not previously determined the appropriate standard for reviewing a claim that prior convictions are related, but a close review seems appropriate in this case. *See United States v. Davis,* 922 F.2d 1385, 1388 (9th Cir.1991) (whether two cases are related is subject to de novo review). *But see United States v. Jones,* 899 F.2d 1097, 1101 (11th Cir.) (whether two cases are related is subject to clearly erroneous standard), *cert. denied,* — U.S. —, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990).

█ We think the possession of the weapons on July 18, 1974, must be deemed to have occurred on the same occasion as the possession of stolen goods at and prior to the same date. We think this is true for the purpose of the guidelines even though Connor probably had also possessed the goods for some period up to the arrest, while he was negotiating the sale with the FBI, and may not have possessed the weapons throughout the same period. This conclusion accords with a common sense definition of "occurred on a single occasion." We also note the probability that if all these offenses had been federal offenses the cases would have been consolidated for trial and deemed related for that reason.

On appeal, the government does not argue that the offenses did not occur at the same time but rather argues that it is incorrect to think of single occasion only in terms of time. The government suggests, "A better interpretation of the meaning of 'single occasion' is whether cases are so totally factually related and inextricably intertwined as to make the acts involved one." Even under the government's definition, Connor's offenses may have been related because he most likely had the knife and pistol to defend himself and possession of the very valuable stolen goods.

Nonetheless, courts which have mentioned the "single occasion" requirement have referred to it in terms of time. *See United States v. Davis,* 922 F.2d 1385, 1388 (9th Cir.1991) (no issue of whether offenses occurred on a single occasion because defendant did not even "argue that they occurred within the same general time period"); *United States v. Bishop,* 921 F.2d 1068, 1072 (10th Cir.1990) (Ebel, J., dissenting) (offenses are close to meeting single occasion test when they occur within a week and are "closely related from a temporal point of view"), *cert. denied,* — U.S. —, 111 S.Ct. 2034, 114 L.Ed.2d 119 (1991); *United States v. Jones,* 899 F.2d 1097, 1101 (11th Cir.) (cases did not occur on a single occasion because an hour and a half separated the two robberies), *cert. denied,* — U.S. —, 111 S.Ct. 275, 112 L.Ed.2d 230 (1990).

The Sentencing Commission apparently intended a broad reading of "related cases." The guidelines commentary includes any offenses that are consolidated for trial or sentencing in its definition of "related cases."[1] We would have very odd results if only "inextricably intertwined" cases could be deemed to occur on a single occasion and thereby be related cases, but cases that were reasonably consolidated for trial—although the offenses neither occurred at the same time nor were inextricably intertwined—were related cases. Such a system would suggest that those, like Connor, who committed crimes subject to different jurisdictions deserve a different punishment from those who commit crimes within the same jurisdiction. Courts have clearly rejected such an approach. *United States v. Houser*, 929 F.2d 1369, 1374 (9th Cir.1990) (cases are related where defendant was charged and convicted in separate cases merely because drug sales occurred in different counties); *Cf. United States v. Rivers*, 929 F.2d 136, 140 (4th Cir.1991) (cases are not related every time sentencing is consolidated because defendant who was fortuitously sentenced by one judge on one day would face less punishment than similarly situated defendant who was sentenced on successive days or on the same day by different judges).

The government supported its definition of "single occasion" by relying on *United States v. Garcia*, 909 F.2d 389 (9th Cir. 1990), but *Garcia* concerns the definition of a "prior sentence," not the definition of "single occasion." A "prior sentence" is "any sentence previously imposed ... for conduct not part of the instant offense." U.S.S.G. § 4A1.2(a)(1) (1990). Although "instant offense" and "single occasion" convey similar ideas, under the guidelines they concern different situations which require different definitions. *Garcia*, 909 F.2d at 392 (9th Cir.1990); *United States v. Walling*, 936 F.2d 469, 471 (10th Cir.1991);

*United States v. Banashefski*, 928 F.2d 349, 353 (10th Cir.1991). *But see United States v. Query*, 928 F.2d 383 (11th Cir. 1991) (using definition for "related cases" to define "instant offense").

Because the 1975 federal case and the 1976 Massachusetts case are related, only one sentence should have been counted, putting Connor in criminal history category IV. The properly calculated guidelines range would have been 77–96 months. This conclusion, if no other, will require a remand to determine the proper extent of any departure. The departure made by the judge was the difference between a range of 92–115 months and 240 months. The 240 month sentence cannot be sustained without justifying a greater departure, i.e. between 77–96 and 240, and the district court rather than we should make this determination.

## B. *Upward Departure*

A court may depart from the guidelines if "the court finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b). In reviewing a decision to depart from a guidelines range, we follow the three steps: first, applying a *de novo* standard of review, we determine whether the district court relied on appropriate grounds for departure; second, we determine whether the findings of fact as to factual grounds for departure were clearly erroneous; third, applying a deferential standard of review, we determine whether the degree of departure is appropriate. *United States v. Terry*, 930 F.2d 542, 544 (7th Cir.1991). The second step is not relevant to this case. Connor has not objected to any facts presented in the presentence report, and in explaining the basis for the departure the district court relied

---

1. The Ninth Circuit has said the definition in the application note is too broad and has narrowed it by not deeming cases consolidated only for sentencing to be related cases, *United States v. Gross*, 897 F.2d 414, 415 (9th Cir.1990); *see also United States v. Wildes*, 910 F.2d 1484, 1487 (7th

Cir.1990) (citing *Gross* with approval but refraining from deciding the issue), but even under the Ninth Circuit approach the definition of related cases includes all cases consolidated for trial.

on no facts other than those in the presentence report.

Judge Mills identified five reasons for an upward departure:

*First,* were it not for the fact that several of the defendant's prior felony convictions were excluded because of age or because they were related cases, the defendant would be sentenced as a career offender under § 4B1.1. *Second,* because the sentences the defendant received on those convictions were not used in computing his criminal history category, the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that he will commit other crimes. *Third,* the similarity between this conviction for interstate transportation of stolen property and the 1975 conviction for sale or receipt of stolen goods shows that the defendant has demonstrated the need for greater deterrence. *Fourth,* without an upward departure the defendant would receive absolutely no punishment for his attempt to escape. *Finally,* the Court considers the involvement of the .38 caliber handgun in the attempted escape to be a critical aggravating factor warranting departure.

*Connor,* 743 F.Supp. at 585. We will review each of these justifications to determine whether they are appropriate grounds for departure before we consider the degree of departure.

### 1. Consideration of Sentences Not Counted Because of Age or Being Related

We will consider the first two justifications together. Judge Mills considered sentences which had not been counted either because they were too old or were pronounced in cases related to cases in which the sentences were counted. He reasoned that some of these were for crimes of violence and that if they had been counted, defendant would have been a career offender with a range of 262–327 months. U.S.S.G. § 4B1.1. He concluded that because those sentences were not counted, the calculated criminal history category did not adequately reflect the seriousness of

Connor's criminal conduct or the likelihood that he will commit other crimes. One conviction (1971) was excluded because it did not occur in the applicable time period as defined by § 4A1.2(e). Two other convictions (1967) were excluded because they were related to a conviction which was counted. All were for conduct in 1966 at the age of 23.

The guidelines say that in some situations "the criminal history category does not adequately reflect the seriousness of the defendant's past criminal conduct or the likelihood that the defendant will commit other crimes" and that in these situations upward departures are necessary. U.S.S.G. § 4A1.3, p.s.

The Sentencing Commission recognized that its definition of "related cases" could be overly broad and could create a situation that required an upward departure to adequately reflect the defendant's past criminal conduct. The Commission explained,

[I]f the defendant commits a number of offenses on independent occasions separated by arrests, and the resulting criminal cases are consolidated and result in a combined sentence of eight years, counting merely three points for this factor will not adequately reflect either the seriousness of the defendant's criminal history or the frequency with which he commits crimes. In such circumstances, the court should consider whether departure is warranted.

U.S.S.G. § 4A1.2, comment. (n. 3) (1990). This example is very different from the related crimes in Connor's criminal history. The related crimes include the attack for which Connor was sentenced to 12–20 years and received three points, and several other attacks by Connor that all occurred on the same day. The presentence report does not describe the attacks, but Connor characterizes the event as a shootout.

Although courts have frequently relied on related cases to justify upward departures, the departures usually occur in situations which closely resemble the example provided by the Commission. *E.g., United States v. Hines,* 943 F.2d 348 (4th Cir.

1991); *United States v. Williams*, 922 F.2d 578, 582 (10th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1637, 113 L.Ed.2d 733 (1991); *United States v. Ocasio*, 914 F.2d 330, 335 (1st Cir.1990); *United States v. Medved*, 905 F.2d 935, 942 (6th Cir.1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 997, 112 L.Ed.2d 1080 (1991); *United States v. Williams*, 901 F.2d 1394, 1397–98 (7th Cir. 1990), *cert. granted and vacated*, —— U.S. ——, 111 S.Ct. 2845, 115 L.Ed.2d 1014 (1991); *United States v. Dorsey*, 888 F.2d 79 (11th Cir.1989), *cert. denied*, 493 U.S. 1035, 110 S.Ct. 756, 107 L.Ed.2d 772 (1990). In *Ocasio*, 914 F.2d at 335, the First Circuit said departure was justified when "[s]heer fortuity, rather than the conscious design of the Sentencing Commission, seemingly led to consolidation of certain charges, involving essentially unrelated crimes committed at widely divergent times." In *Ocasio*, there were three sets of related cases, and the court explained that those crimes which were "interconnected in fact" were properly grouped together but that crimes "occurring on completely different dates and involving completely different victims" were a basis for upward departure. *Id.*

We could find only two cases in which a court departed from the guidelines to account for related cases when the related cases occurred on or near the same day. In the first case, *United States v. Rivas*, 922 F.2d 1501, 1503 (10th Cir.1991), the related cases were first degree murder and kidnapping, the offenses had occurred as recently as 1982, and the defendant had received consecutive life sentences. The court allowed departure because

> the addition of a mere three points ... does not adequately reflect the exceedingly serious nature of his previous crimes nor does it reflect the danger that he poses to the public. As the district court noted, the logic of treating these separate and violent crimes against two victims as one prior sentence is not readily apparent, at least as far as measuring the gravity of the defendant's prior offenses is concerned.

*Id.* at 1504 (citation omitted). Although Connor's prior crimes are serious, they are not extraordinary or atypical like the crimes in *Rivas*.

In the second case, the related cases were attempts to kill three separate victims. *United States v. Jackson*, 903 F.2d 1313, 1318 (10th Cir.1990), *rev'd on other grounds*, 921 F.2d 985 (10th Cir.1990). In *Jackson*, the court explained that attacks on several victims on a single occasion are not grouped together for the purpose of determining the offense level, U.S.S.G. § 3D1.2, and that this indicated that a departure should be allowed when offenses against separate victims are not counted separately for the purpose of calculating the criminal history level. This reasoning is not persuasive. The Sentencing Commission clearly intended courts to calculate the offense level and the criminal history level differently. The Commission's decision not to require, or even suggest, that related cases be against the same victim indicates that cases could be related even though against different victims.

Because Connor's offenses are not categorized as related cases as the result of an overly broad definition of "related cases" and because his related offenses are not of a kind or degree not contemplated by the Sentencing Commission, the related cases are not an appropriate ground for departure.

Next we must consider whether the 1971 conviction which was excluded because of age is an appropriate ground for departure. Under the guidelines, a prior sentence exceeding one year and one month is not counted if it occurred and the resulting incarceration ended more than fifteen years before the commencement of the instant offense. U.S.S.G. § 4A1.2(e)(1). However, the commentary to the guidelines says,

> If the government is able to show that a sentence imposed outside this time period is evidence of similar misconduct or the defendant's receipt of a substantial portion of income from criminal livelihood, the court may consider this information in determining whether to depart and

sentence above the applicable guideline range. .

U.S.S.G. § 4A1.2, comment. (n. 8) (1990).[2]

If we were to apply the commentary, an upward departure would not be appropriate. Connor's old offense is not similar to his current offense, and the district court did not find that Connor has derived substantial income from criminal livelihood. The uncounted conviction is an assault and battery which occurred in 1966.[3] According to the presentence report, "Mr. Connor and his wife were arrested for breaking, entering and larceny in the night time for theft of antiques from a private home. Mr. Connor assaulted the arresting deputy sheriff. He assaulted another deputy during an escape attempt seven days later." Although there is a similarity in that Connor was stealing antiques in 1966 and he is now selling stolen art, the crimes for which Connor was convicted are different.

Some courts, however, have allowed an upward departure when there is a serious history of criminality regardless of whether the specific requirements in the application note are met. *E.g., Jackson,* 903 F.2d at 1318 (10th Cir.1990); *United States v. Carey,* 898 F.2d 642, 645-46 (8th Cir.1990). One court held the defendant's old convictions should be considered because the defendant had spent eleven of the past fifteen years in prison; the fact that he had not been convicted of any crimes in the past fifteen years did not indicate he was not a recidivist. *United States v. Russell,* 905 F.2d 1439, 1444 (10th Cir.1990). Connor has spent over half of the past fifteen years in prison[4] and, like the defendant in *Russell,* has in the past displayed a tendency to return to a life of crime soon after he is released.

Although this court has never specifically said that a pattern of counted and uncounted convictions is special enough so as not to have been adequately considered by the Commission, and therefore justify upward departure, two cases have allowed upward departures to account for old convictions in situations that do not clearly come under the commentary. In *United States v. Dzielinski,* 914 F.2d 98, 101 (7th Cir.1990), this court affirmed a district court's decision to depart upwards. Although the offenses with sentences too old to be counted and the current crime were not similar, the defendant's motive for the old crimes was the same as his motive for the current crime: to obtain money to repay a victim of the defendant's illegal investment scheme. In *United States v. Williams,* 910 F.2d 1574, 1579 (7th Cir. 1990), *cert. granted,* —— U.S. ——, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991), this court affirmed an upward departure even though the old crimes were not similar to the current crime because the old crimes were " 'reliable information' indicating more extensive criminal conduct than otherwise reflected by the criminal history." Although in *United States v. Fonner,* 920 F.2d 1330 (7th Cir.1990), this court held that a long series of misdemeanors which were not counted was not an appropriate basis for an upward departure, the court did not foreclose the possibility that departure would be appropriate even if old offenses were neither similar nor an evidence of criminal livelihood. The court simply stressed the need to identify some "circumstances 'not adequately taken into consider-

**2.** The Supreme Court has granted certiorari in a case which presents the issue whether convictions more than fifteen years old can result in an upward departure. *United States v. Williams,* 910 F.2d 1574 (7th Cir.1990); *cert. granted,* —— U.S. ——, 111 S.Ct. 1305, 113 L.Ed.2d 240 (1991).

**3.** The date of this offense is not altogether clear. The presentence report says Connor was arrested on January 5, 1966, but the description of the offense says that it occurred on July 21, 1968. It seems likely that the offense occurred in 1966 because Connor was in jail in 1968.

**4.** It appears that Connor was imprisoned from May of 1966 to March of 1980 except for parole from October 2, 1972, to April 25, 1975, and from January 27, 1978, to October 10, 1979. He was again imprisoned from about October 30, 1985, to June 26, 1986. Connor was also imprisoned for a conviction that has been vacated from approximately 1980 to 1985. Our analysis is not affected by the fact that the sentence was vacated; Connor's opportunity to commit crime was curtailed even though he was wrongly imprisoned.

ation' by the Commission. 18 U.S.C. § 3553(b)." *Id.* at 1334; *see also United States v. Terry,* 930 F.2d 542, 544–45 (7th Cir.1991) (nineteen-year-old court martial that resulted only in a fine is not basis for upward departure).

■ As has been pointed out there is a slight similarity between the conduct underlying Connor's 1971 sentence for assault and battery and the instant offense. We are not prepared to say, in light of the decisions of this and other courts, that this could not be a proper reason for upward departure, but Judge Mills did not focus on this comparison. On remand, the district judge will be free to consider the similarity between the offenses, the fact that Connor was in jail for over half of the past 15 years, the seriousness of Connor's criminal history, and any other exceptional factors in order to decide whether a departure is justified.

### 2. *Consideration of Similarity between Offenses*

■ The district court's third justification for departure is that the similarity between the instant conviction for interstate transportation of stolen property and the 1975 conviction involving property which has crossed a state line after being stolen shows the need for greater deterrence. Both offenses involve attempts to sell stolen art. Connor concedes that in many cases this is an appropriate basis for departure. *See Williams,* 901 F.2d at 1398–99, *cert. granted and vacated,* — U.S. ——, 111 S.Ct. 2845, 115 L.Ed.2d 1014 (1991); *United States v. Schmude,* 901 F.2d 555, 559 (7th Cir.1990). However, he argues that the court cannot depart in this case because his offense level was increased by four levels because of his prior conviction; thus, the need for extra deterrence was already adequately considered. Connor's offense level was increased by four levels because he was "in the business of receiving and selling stolen property." U.S.S.G. § 2B1.2(b)(3)(A) (1990). We agree with Connor that this enhancement adequately reflects the need for extra deterrence because only those who have previ-

ously engaged in significant illegal conduct which is similar to the instant offense will be "in the business of receiving and selling stolen property." Although this enhancement would apply even to those who have not previously been convicted, we do not believe there is a difference between those who have and have not had their business interrupted by a conviction that warrants a further increase in a sentence.

### 3. *Consideration of Otherwise Uncounted Attempted Pretrial Escape*

■ The district court's fourth justification is that neither Connor's offense level nor his criminal history level reflected an increase based on his attempted escape. The district judge explained that the offense level was too low because the guideline provisions for calculating the offense level in multiple count cases prevented the attempted escape count from affecting the offense level. *See* U.S.S.G. §§ 3D1.1, 3D1.4.

The background commentary to § 3D1.4 says that in some cases the multiple count offense level will be inadequate and upward departure necessary. The district court believed that this is such a case: "An individual who attempts to escape from pre-trial detention ... demonstrates utter disdain for our criminal justice system. He also creates the potential for harm to the public arising out of his escape. Such an individual should receive some punishment for his action." *Connor,* 743 F.Supp. at 588.

The Eighth Circuit has recently rejected a very similar argument. *United States v. Cox,* 921 F.2d 772, 774 (8th Cir.1990). In *Cox,* the court said that a conviction for escape from pretrial detention which did not cause an increase in the offense level for bank robbery did not warrant an upward departure. The court explained that the Sentencing Commission had determined how to calculate the offense level when multiple counts were involved, and an escape was not sufficiently unusual to warrant disregarding the guidelines. We agree with the Eighth Circuit.

■ Nonetheless, the district judge could have enhanced Connor's offense level by two levels for obstruction of justice. U.S.S.G. § 3C1.1. At the time Connor was sentenced, escape was not specifically included in the commentary to the guidelines as conduct for which an obstruction of justice enhancement was appropriate, but many courts have recognized that the enhancement applies to pretrial escape. *United States v. Valdiosera–Godinez*, 932 F.2d 1093, 1100 (5th Cir.1991); *United States v. Hankins*, 931 F.2d 1256, 1265 (8th Cir.1991); *United States v. Talbott*, 902 F.2d 1129, 1131 (4th Cir.1990); *see also United States v. Teta*, 918 F.2d 1329, 1334–35 (7th Cir.1990) (enhancement applies to conduct that may hinder the progress of a case including failure to appear at judicial proceedings). The Sentencing Commission made clear that the obstruction of justice enhancement applies to escape in an amendment to the commentary effective November 1, 1990. U.S.S.G. § 3C1.1, comment. (n. 3(e)). Even though the government did not appeal the failure to enhance the sentence for obstruction of justice, we believe that the district court may include the enhancement on remand.[5]

■ The district court also thought upward departure was necessary because the attempted escape was not properly reflected in the criminal history category. According to the court, only an arbitrary distinction in § 4A1.1(d)–(e) of the guidelines between detention before and after conviction prevented the attempted escape from increasing the criminal history category. However arbitrary a distinction this may be, it clearly is a distinction drawn by the Sentencing Commission and, therefore, it is not a distinction which we can disregard. *See Fonner*, 920 F.2d at 1334.

Moreover, the distinction is not arbitrary. Section 4A1.1(d) applies to all offenses committed "while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." The offense may be an escape, as it was in *United States v. Jimenez*, 897 F.2d 286 (7th Cir.1990), but § 4A1.1(d) applies whatever the offense may be. In the instant case, Connor did not commit the escape or the other offenses while under sentence. We think the Commission could rationally add criminal history points for a defendant who commits offenses while under sentence, without doing so for an offense committed while in custody awaiting trial. The Sentencing Commission rationally decided that one who has been convicted of a crime and is being punished for the crime but who is still willing to commit a crime is more dangerous than someone who has not yet received punishment.

The district judge relied on *Jimenez*, 897 F.2d 286, to support his reasoning, but *Jimenez* merely holds that § 4A1.1(d) applies to a sentence for escaping from prison because the offense level for escape does not presuppose that the defendant was under a criminal justice sentence at the time of the escape. In *Jimenez*, this court anticipated a situation similar to Connor's and said it was rational to "distinguish the escaped penitentiary prisoner from the person who escapes police custody after a lawful arrest." *Id.* at 288.

### 4. Consideration of Gun Possessed by Confederate

■ The district court's final justification for upward departure is that a gun was involved in Connor's escape attempt. Connor himself never had possession of a gun and nothing shows that he directed others involved in his attempted escape to supply a gun. The district court, however, held that Connor "certainly could have foreseen that one of those he involved in

---

5. If the court adds two points for obstruction of justice, the grouping of the offenses will change. "When one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts" the counts should be grouped together. U.S.S.G. § 3D1.2 (1990). The commentary says that this rule applies to obstruction of justice adjustments. U.S.S.G. §§ 3D1.2, comment. (n. 5), & 3C1.1, comment. (n. 6.). In *United States v. Hankins*, 931 F.2d 1256, 1264 (8th Cir.1991), the Eighth Circuit applied this rule when a court added two points for obstruction of justice to the offense level of a defendant who was convicted of both bank robbery and escape from pretrial detention.

the escape might possess a gun." *Connor*, 743 F.Supp. at 589.

Although a court may depart upwards when a "weapon or dangerous instrumentality" is used, U.S.S.G. § 5K2.6 (1990), p.s., the connection between Connor and the gun is too distant to warrant such a departure in this case. The Ninth Circuit has held that an upward departure under § 5K2.6 is appropriate only when the government can show the connection between the weapon and the charged offense. *United States v. Nuno–Para*, 877 F.2d 1409, 1414 (9th Cir.1989) (ownership of weapon does not prove it was used in transportation of illegal aliens). Connor was charged with attempted escape, and his attempt was frustrated before the gun became involved as a result of the government's ploy. Perhaps if Connor had gone further before frustration of his escape, he would have called on a confederate who carried a gun under circumstances where Connor could be held responsible. But we think that his sentence cannot be enhanced because of activities which resulted from the intervention of the government after the attempt had failed. Furthermore, all cases under § 5K2.6 have involved defendants who have had actual possession of a gun. *E.g., United States v. Carpenter*, 914 F.2d 1131 (9th Cir.1990) (defendant provided rifle to juveniles whom he hired to kill his wife); *United States v. Hawkins*, 901 F.2d 863, 865 (10th Cir.1990) (upward departure not allowed for claimed possession of nonexistent weapon).

Under an analogous section, U.S.S.G. § 2D1.1(b)(1),[6] a sentence for drug trafficking may be enhanced because of another person's possession of a dangerous weapon only in limited circumstances. In *United States v. Missick*, 875 F.2d 1294, 1301 (7th Cir.1989), this court said that the defendant's sentence should not be enhanced just because those with whom he participated possessed a gun. Although the theory of co-conspirator liability could justify an enhancement, that theory can apply only if the possessor of the gun and the defendant are co-conspirators, the possessors of the gun possessed it in furtherance of the conspiracy, and the defendant was a member of the conspiracy at the time of the possession of the gun. *Id.* at 1301–02; *see also United States v. Edwards*, 940 F.2d 1061, 1063 (7th Cir.1991) (defendant not convicted of a conspiracy charge cannot receive enhancement for weapons possessed by another participant). Some courts have not required use of the co-conspirator theory to justify an enhancement, but in those cases, the defendant was with the participant who possessed the gun and knew that the gun was present. *United States v. Fiala*, 929 F.2d 285, 289 (7th Cir.1991) (defendant knew there were guns in car which he was driving); *United States v. Armond*, 920 F.2d 480, 482 (7th Cir.1990) (defendant knew his co-defendant had a gun and would have assured presence of gun before delivering drugs). These cases have little relevance to Connor. The involvement of a gun does not warrant an upward departure.

### 5. Instructions for Remand of Case

We have held that on remand the district judge will be free to consider whether the background similarity between the conduct underlying the uncounted 1971 sentence and the instant one, taken with other circumstances, justifies an upward departure. We have also held that on remand the enhancement for obstruction of justice by reason of attempted escape, and adjustments required by that change, may be applied.

As already pointed out, a remand is necessary, and we need not attempt to decide

---

**6.** Section 2D1.1(b)(1) (1990) and § 5K2.6 (1990) are very similar. Section 2D1.1(b)(1) says,

> If a dangerous weapon (including a firearm) was possessed during commission of the offense, increase by 2 levels.

Section 5K2.6 (1990) says,

> If a weapon or dangerous instrumentality was used or possessed in the commission of the

offense the court may increase the sentence above the authorized guideline range.

The only difference with regard to possession is that one section says "in commission of the offense" while the other says "during commission of the offense." Although this difference may be significant in some circumstances, it is not here.

whether the factors proper to justify an upward departure would justify a departure sufficient to impose the sentence in this case. *See United States v. Franklin,* 902 F.2d 501, 508–09 (7th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990). We leave the decision of whether to depart and the appropriate degree of departure, if any, to determination on remand. We emphasize that the court will be completely free to use its discretion in making that decision, except to the extent that we have determined that particular justifications relied on by Judge Mills are erroneous.

On remand, the court should also consider that Connor cooperated or offered to cooperate with the FBI on several matters. Although much of Connor's offers were not helpful to the FBI, the government stated that it would not move for upward departure because of Connor's cooperation. The district judge did not mention Connor's cooperation, but on remand, the judge should at least consider whether Connor's cooperation should affect the extent of departure.

*C. Ex Parte Communications*

Connor argues that resentencing is necessary because the district judge received information purporting to describe past criminal activity of Connor in Massachusetts. This information was contained in letters to the judge enclosing newspaper clippings and was not reflected in the record or presentence report. Neither Connor nor the prosecution was aware of the material until after sentencing.

In remarks at sentencing the judge made somewhat vague references to past bargaining between Connor and the authorities. Some of these references do not reflect anything in the record and are at least consistent with the judge's awareness of the content of the letter material.

When the defense and prosecution brought this material to the judge's attention, he entered an order noting that unsolicited material is often received, and reciting that under his standard procedure he glanced at these items and forwarded them to the clerk's office or the probation office. He stated unequivocally that he "did not rely on anything contained in the letters or the newspaper articles in arriving at the defendant's sentence."

■ We think a trial judge should endeavor to insulate himself from materials of this type unless he makes them known to the parties. In *United States v. Curran,* 926 F.2d 59 (1st Cir.1991), the First Circuit remanded a case for resentencing where the facts were very similar to those here. The court invoked its supervisory powers to justify reversal and explained that although the district judge had followed the Federal Rules of Criminal Procedure, it was important "that a judicial procedure must not only be just but must appear to be just." *Id.* at 64.

We need not decide whether appearances in the instant case would require resentencing, as in *Curran.* Resentencing is required here for other reasons, and we have decided that a different judge should preside.

## CONCLUSION

We VACATE Connor's sentence and REMAND for sentencing consistent with this opinion. Circuit Rule 36 shall apply on remand.

KANNE, Circuit Judge, concurring in part and dissenting in part.

As the majority states at page 8: "[t]his conclusion [that the defendant should have been sentenced as a Criminal History Category IV defendant], if no other, will require a remand to determine the proper extent of any departure." Having arrived at that conclusion, I believe that the court should not range any further to reach the other issues addressed.

The new sentencing judge should be free to determine the proper extent of any departure based on a fresh examination of the facts. By resolving or suggesting the resolution of the sentencing issues relating to departure, I believe the majority has effectively constructed an "appropriate" sentence and significantly foreclosed the

district court's discretion and ability to resolve those matters in the first instance.

"It is not for us to determine the appropriate sentence here even with the use of the Guidelines. *See* 18 U.S.C. § 3742(f)(2). That must be left to the trial judge's exercise of discretion within the Guidelines, with a record explanation of how and why the sentence was enhanced." *United States v. Miller*, 874 F.2d 466, 471 (7th Cir.1989).

I concur in the decision of the court to vacate the sentence given the defendant and the remand for resentencing under Criminal History Category IV. I dissent from that part of the majority opinion which requires the district judge to forego analysis of certain departure considerations and directs consideration of other specific factors.