**UNITED STATES of America,**
**Plaintiff–Appellee,**

**v.**

**Bjarke KORNO, Defendant–Appellant.**

**No. 92–2894.**

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 15, 1993.

Decided Feb. 1, 1993.[1]

---

1. We affirmed this case from the bench on January 15, 1993, and indicated that this opin-  ion would soon follow.

Larry Wszalek (argued), Office of the U.S. Atty., Madison, WI, for plaintiff-appellee.

Earl H. Munson and Jeffrey Kassel (argued), LaFollette & Sinykin, Madison, WI, for defendant-appellant.

Before CUMMINGS, EASTERBROOK, and RIPPLE, Circuit Judges.

RIPPLE, Circuit Judge.

Defendant Bjarke Korno appeals his sentence under the Sentencing Guidelines. Mr. Korno claims that the district court erred when it made an upward departure on the basis of his numerous Canadian convictions. We affirm Mr. Korno's sentence.

## I. BACKGROUND

During a two-month period in the spring of 1991, Mr. Korno defrauded the Monycor Savings Bank of Frederic, Wisconsin, a federally insured financial institution, of $11,742.00. Mr. Korno had opened a checking account with the bank and had made ten deposits into the account. Seven of the deposits were checks drawn on various Canadian banks in Quebec and were made payable to Mr. Korno. At the same time Mr. Korno was making these deposits, he was also withdrawing money and writing checks on the Monycor account. Monycor cleared and paid the checks written by Mr. Korno before it discovered that the seven deposited Canadian checks were worthless. The Canadian accounts had either never existed or had been closed due to insufficient funds.

A grand jury indicted Mr. Korno on one count of bank fraud in violation of 18 U.S.C. § 1344. Mr. Korno pled guilty and the district court sentenced him on July 28, 1992. The presentence report determined Mr. Korno's adjusted offense level to be ten.[2] The report placed Mr. Korno in Criminal History Category II because he had a prior conviction for check forgery in Minnesota. Based upon an adjusted offense level of ten and a Criminal History Category of II, the imprisonment range for Mr. Korno was 8–14 months. The presentence report, however, recommended an upward departure based on the belief that Mr. Korno's criminal history category significantly underrepresented the seriousness of his criminal history. The report stated that Mr. Korno has a multitude of Canadian convictions for offenses including fraud, burglary, possession of stolen property, use of counterfeit documents, possession of stolen credit cards, and assault. Furthermore, the report noted that had Mr. Korno committed these offenses in the United States,

---

**2.** Mr. Korno's base offense level for bank fraud was six; three levels were added because the bank's loss exceeded $10,000; two more levels were added because Mr. Korno had engaged in more than minimal planning of the offense; and finally, because the offense involved the use of a foreign bank account, the offense level was increased to twelve pursuant to Guideline § 2F1.1(b)(5). Mr. Korno received a two-level reduction for acceptance of responsibility, resulting in an adjusted offense level of ten.

he would have had a total of fifteen criminal history points as a result of these convictions, and he would have been placed in Criminal History Category VI rather than II. Therefore, the guideline range for Mr. Korno would have been 24–30 months of imprisonment.

The district court adopted the guideline calculations in the presentence report and agreed with the recommendation to depart upward based upon Mr. Korno's extensive Canadian criminal record. The information about Mr. Korno's foreign convictions included in the presentence report was provided by the United States Probation Office's liaison officer in Montreal. At the sentencing hearing, the district court relied on the information contained in the presentence report and specifically found that Mr. Korno's Canadian convictions were valid, that Mr. Korno had been represented by counsel in connection with the convictions, and that the Canadian justice system is "sufficiently close to the American system as to make those convictions reliable ones to include in considering where to sentence Mr. Korno." Tr. at 9. Moreover, the district court found that, in view of Mr. Korno's lengthy record of past criminal offenses, there was a great likelihood of recidivism. The court then departed upward to Criminal History Category VI. Mr. Korno was sentenced to 24 months' imprisonment and ordered to pay restitution to Monycor Savings Bank. Mr. Korno now appeals his sentence.

## II. ANALYSIS

At the sentencing hearing, Mr. Korno objected to the use of his prior Canadian convictions to determine his sentence on the Wisconsin bank fraud offense. Mr. Korno now argues that the district court's upward departure was unreasonable because the court treated the foreign convictions as though they had occurred in the United States. Mr. Korno claims that the district court erred by mechanically treating his Canadian convictions as equivalent to convictions under domestic law. Furthermore, Mr. Korno contends that, because he will be returned to Canada to face

charges pending against him in Quebec, the Canadian courts are in a better position to evaluate his prior Canadian convictions than is a United States District Court. For these reasons, Mr. Korno contends that we should remand his case for resentencing.

■■■ We must first determine whether the district court's stated grounds for departure from the initial Guideline range are justified, and then we must review the degree of departure for reasonableness. *United States v. Morrison,* 946 F.2d 484, 496 (7th Cir.1991). This court reviews a district court's upward departure under the Sentencing Guidelines to "determine whether it was reasonable in light of the district court's explanation for its departure at the time of sentencing." *United States v. Gaddy,* 909 F.2d 196, 198–99 (7th Cir.1990). We give considerable deference to "a sentencing court's determination of what Criminal History Category most accurately reflects the defendant's actual criminal history." *United States v. Lewis,* 954 F.2d 1386, 1396 (7th Cir.1992).

■■■ Pursuant to Sentencing Guidelines § 4A1.2(h) foreign sentences cannot be counted in computing a defendant's criminal history category. *See also United States v. Newman,* 965 F.2d 206, 209 (7th Cir.) (noting that a Canadian conviction cannot count in determining a criminal history category), *cert. denied,* —— U.S. ——, 113 S.Ct. 470, 121 L.Ed.2d 377 (1992). However, if reliable information shows that the criminal history category underrepresents the seriousness of the defendant's prior criminal conduct or the probability of recidivism, a sentencing court may depart upward from the applicable guideline range. U.S.S.G. § 4A1.3. Section 4A1.3(a) specifically provides that information about foreign offenses may be used as a basis for upward departure. The district court, therefore, followed the Sentencing Guidelines when it considered Mr. Korno's foreign convictions and decided to depart upward. The court did not violate § 4A1.2(h) by using the convictions to compute Mr. Korno's criminal history category; instead, it followed § 4A1.3(a) and decided to depart

upward on the basis of Mr. Korno's numerous Canadian convictions.

■ While we give deference to a district court's findings on the appropriate degree of departure, the degree of departure must reflect the structure of the Sentencing Guidelines and must not contravene them. *Gaddy,* 909 F.2d at 199. Mr. Korno contends that the district court violated this precept by mechanically treating his Canadian convictions as the equivalent of domestic convictions and merely plugging the foreign convictions into the criminal history calculations. The methodology resulted, he contends, in sentencing him as if the convictions had occurred in the United States.

We must disagree with Mr. Korno's characterization of the district court's sentencing decision. As noted above, the district court did not use Mr. Korno's Canadian convictions to compute his criminal history; it used them to decide whether to depart from the applicable sentencing range. Moreover, there was nothing mechanistic about the court's findings regarding the appropriate degree of departure. The Canadian convictions were for serious crimes. The number of criminal offenses in the space of a year and a half, reflected in Mr. Korno's Canadian record, led the court to believe that the likelihood of Mr. Korno's commission of additional crimes is quite high. Thus, his initial Criminal History Category of II underrepresented the severity of his past criminal conduct.

Additionally, the district court found reliable the information about Mr. Korno's prior record. Relying on the information provided by the United States Probation Office's liaison in Montreal, the district court determined that the convictions were valid, that Mr. Korno had been represented by counsel, and that the Canadian justice system is sufficiently close to the United States' system so as to make the convictions reliable enough to include in a determination of the appropriate degree of departure under the Guidelines.[3]

Because Mr. Korno's criminal history category more closely resembles a Category VI rather than a Category II, the guideline range under Category VI was correctly used to guide the district court's departure. *See* U.S.S.G. § 4A1.3. Therefore, the district court's upward departure was reasonable and reflected the structure of the Sentencing Guidelines.

### Conclusion

For the reasons enumerated above, we affirm Mr. Korno's sentence.

AFFIRMED.

---

**3.** Mr. Korno implies in his brief on appeal, as he did at oral argument, that the district court could not properly consider his Canadian convictions because it had no legitimate knowledge of the circumstances surrounding his foreign convictions or of the legal system in Quebec, Canada. We disagree. A sentencing court has great latitude to determine the use of information presented for sentencing. That latitude certainly extends to its assessment of the significance of foreign criminal convictions. *Cf.* Federal Rule of Criminal Procedure 26.1 (stating that a court "in determining foreign law, may consider any relevant material or source, including testimony, whether or not submitted by a party or admissible under the Federal Rules of Evidence...."). A major purpose of sentencing hearings is to provide the judge with a chance to determine what information is sufficiently reliable to consider in sentencing. *United States v.*

*Lewis,* 910 F.2d 1367, 1373 (7th Cir.1990). Information presented at sentencing hearings does not have to conform to the rules of evidence. *United States v. Troxell,* 887 F.2d 830, 835 (7th Cir.1989) (citing *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972)). A sentencing judge is free to consider a wide variety of information that might have been inadmissible at trial. *United States v. Beal,* 960 F.2d 629, 634 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 230, 121 L.Ed.2d 166 (1992). A defendant must, of course, have a reasonable opportunity to object to information that he considers incorrect or unreliable. *See Beal,* 960 F.2d at 634. Mr. Korno did review the presentence report and the information regarding his prior Canadian convictions. He had the opportunity to object to the court had he found the information incorrect; no objection on these grounds was entered on his behalf.