**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Chong W. TAI, Defendant–Appellant.**

Nos. 94–1083, 94–1415.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 7, 1994.

Decided Dec. 5, 1994.

Matthew R. Bettenhausen, Asst. U.S. Atty. (argued), Barry Rand Elden, Asst. U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for plaintiff-appellee.

Charles B. Sklarsky, Robert R. Stauffer (argued), Jenner & Block, Steven J. Rosenberg, Chicago, IL, for defendant-appellant.

Before CUMMINGS, BAUER, and CUDAHY, Circuit Judges.

CUDAHY, Circuit Judge.

Chong Won Tai (Tai) was convicted of two counts of extortion in 1991. This is the second appeal from the sentencing imposed pursuant to that verdict. On this appeal, Tai challenges the reasons given for the district court's sentence. First, he urges that the district court erroneously found his activities "otherwise extensive." Second, he claims an upward departure in criminal history was not warranted. For the reasons stated below, we affirm in part and reverse in part.

I.

Tai operated a pawn shop in a Korean community in Chicago. Part of his business involved extending loans at exorbitant interest rates to other members of that community. Tai evidently used questionable methods for the collection of those loans. In October 1991, a grand jury indicted Tai on three separate counts of extortion.

The indictment was based upon incidents arising from a $20,000 loan that Tai extended to Suk Kyong Lee (Suk Lee). Suk Lee gave the money to her friend Jung Hwan Lee (Jung Lee) to enable him to purchase a house. When the loan became due, neither Suk Lee nor Jung Lee had the money for repayment. Tai instituted "collection efforts" against them both.

Tai first approached Suk Lee. Carrying a gun and handcuffs, he made threatening statements to her. He later deposited checks that Suk Lee had given him as collateral despite the fact that he knew they had been written on closed accounts. Although Suk Lee was arrested on account of the dishonored checks, the State dismissed charges when apprised of the circumstances of the Tai–Lee relationship.

Tai then attempted to collect Suk Lee's loan from Jung Lee. The collection efforts used on Jung Lee were two-fold. First, Tai tried approaching Jung Lee and his employer. Jung Lee refused to accept responsibility for the loan. Tai then approached Jung Lee's employer, Steven Song Bak Rim (Rim). Tai discussed Jung Lee's loan with Rim, and Rim agreed to speak to Jung Lee about the debt. Rim ultimately conveyed Jung Lee's claim that he had not borrowed any money to Tai. Tai approached Rim about Jung Lee's debt on more than one occasion.

These efforts failing, Tai tried a second approach. He had an unidentified man photograph one of his conversations with Jung Lee. A man claiming to be David Kim called Jung Lee soon thereafter. The caller requested a meeting with Jung Lee to discuss the possibility of placing advertisements in the newspaper where Jung Lee worked. The caller asked Jung Lee to meet him that evening at the Star Motel. When Jung Lee arrived at the motel, two men with knives were waiting for him in the room. They bound him and repeatedly stabbed him in the leg. The men eventually left the motel room and Jung Lee was able to loosen his bonds and go for help.

A few days later, in telephone calls recorded by federal authorities, Tai demanded that Jung Lee pay him $20,000, and repeatedly threatened to "beat up" or "kill" Jung Lee for his failure to pay. Additionally, according to the government, Tai intimated that he was responsible for the stabbing incident. Tai then went to the newspaper office looking for Jung Lee and had a conversation with Rim. According to Rim, Tai at first denied any involvement in the stabbing but then acknowledged that it may have been done on his behalf.

The indictment charged Tai with three counts of extortion based on this behavior. Count I charged him with the extortion of Suk Lee. Counts II and III charged him with the making of and the conspiracy to use extortionate threats against Jung Lee. Tai pleaded not guilty to all three counts. The jury found him guilty of Counts II and III, but acquitted him of the charges in Count I.

Tai was housed at the Metropolitan Correctional Center (MCC) before, during and immediately after trial. During his stay there, Tai continued his extortionate activities. Through the help of his wife, Tai used three-way calls to threaten others who owed him money. The government's tape recordings indicate that Tai made these jailhouse calls both before and after his conviction.

The district court sentenced Tai to 204 months of imprisonment and fined him $175,-000. The court based this sentence on two factors. First, the court enhanced Tai's offense level by four points because it concluded that Tai was an organizer of an "otherwise extensive" activity. U.S.S.G. § 3B1.1(a). Second, the court found an upward departure warranted and added three points to Tai's criminal history based on his post-offense extortion. U.S.S.G. § 4A1.3. Unfortunately, the district court failed to adequately explain its reasons for these enhancements.

Tai appealed to this Court. In *United States v. Chong Won Tai,* 994 F.2d 1204 (7th Cir.1993), we affirmed Tai's conviction but vacated his sentence and remanded for resentencing. This Court instructed the district court to confine its analysis of Tai's role in the offense under § 3B1.1 to the offense of conviction and to articulate the precise basis for its findings. *Id.* at 1212–13. This Court also directed the district court to explain why Tai's continued criminal conduct ought to necessitate a higher criminal history category. *Id.* at 1214.

On remand, the district court imposed the same sentencing enhancements it had handed down originally. A sentence within the original 168 to 210 month sentencing range was therefore appropriate. In light of the fact that Tai had discontinued extorting old clients from prison telephones, the district

court imposed a sentence of 186 months (18 months less than the original sentence). The district court did, however, further justify its enhancements.

The four point increase in Tai's offense level was warranted because Tai was an organizer or a leader of an "otherwise extensive" activity. The extortion of Jung Lee was "otherwise extensive," in the district court's view, because it involved three criminal participants and the unknowing services of two outsiders. Tai and the two men who assailed Jung Lee were criminal participants; Rim and the photographer were the outsiders.

The district court also justified the upward departure in Tai's criminal history. It concluded that Tai's MCC extortion necessitated a higher criminal history category. The continued extortion at the MCC, in addition to the fact that the Jung Lee extortion occurred while on bond in state court, evidenced a "criminal intransigence." This "persistent unlawful conduct" demonstrated the greater risk of recidivism characteristic of offenders having greater criminal histories. The district court therefore placed Tai in Criminal History Category III instead of Criminal History Category I.

Tai takes issue with these determinations on appeal. He first claims that the extortion of Jung Lee was not "otherwise extensive" within the meaning of § 3B1.1. That section requires more, he contends, than the presence of the five individuals that the district court identified. Tai further suggests that the district court's inclusion of Rim in this head count was erroneous. Second, Tai complains of the district court's criminal history enhancement under § 4A1.3. The court, in Tai's view, improperly relied on an analogy to a prior conviction in determining the extent of the departure.

We agree, in part, with Tai's reasoning. The record is insufficient to support a finding that the extortion of Jung Lee was "otherwise extensive." The district court's decision to place Tai in a higher criminal history category is, however, defensible. For these reasons, we affirm in part and reverse in part.

## II.

■ The district court imposed a four-point increase under U.S.S.G. § 3B1.1. This section provides for increases in the offense level if the court finds that the defendant played one of three specified "aggravating roles" in the offense. A four-point increase is the highest increase that the section authorizes. In order to support such a four-point increase, a court must find that:

... the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive....

U.S.S.G. § 3B1.1(a).

■ This subsection envisions a two-part inquiry. A court must look first to the defendant's role in the offense; then it must analyze the nature of the offense itself. Here, the parties apparently do not dispute Tai's role as an "organizer or leader" of the extortionate activity. The nature of that activity is, however, the subject of controversy.

The nature of an activity may be either of two varieties to warrant increase under the subsection. The activity might involve five or more "participants." Or, the activity might be "otherwise extensive." U.S.S.G. § 3B1.1. A "participant" is "a person who is criminally responsible for the commission of the offense." *Id., Application Note* 1. The Guidelines do not provide a definition of "otherwise extensive." They simply state that in making this determination:

... all persons involved during the course of the entire offense are to be considered. Thus, a fraud that involved only three participants but used the unknowing services of many outsiders could be considered extensive.

*Id., Application Note* 3. This interpretive guidance fails to discuss the minimum requirements necessary to support a finding that a given activity was "otherwise extensive."

Tai's case demands that we examine those minimum requirements. The district court premised its enhancement under subsection 3B1.1(a) on the finding that Tai's extortion involved five individuals. Three of these in-

dividuals—Tai and the two assailants who stabbed Jung Lee—were "participants" in light of their criminal responsibility. The other two individuals, however, did not share this criminal responsibility. The district court found that both Rim and Tai's photographer, though facilitating the extortion, were not criminally involved in that activity. The district court held the participation of these five individuals sufficient to warrant a four-point increase because an organization may be "otherwise extensive" if it involves fewer than five participants but includes additional unknowing outsiders.

■ Ordinarily, we would review the district court's determination that Tai played an aggravating role in the offense for clear error. *See United States v. Skinner*, 986 F.2d 1091, 1095 (7th Cir.1993). However, because the instant case involves an interpretation of the scope of the guideline, we review the district court's legal conclusion *de novo*. *United States v. DeCicco*, 899 F.2d 1531, 1535 (7th Cir.1990). Under this standard, the district court's conclusion must fail. The involvement of five individuals, not all of whom are "participants," does not, without more, justify a finding that criminal activity was "otherwise extensive."

We reach this conclusion by way of statutory interpretation. The Sentencing Guidelines presently provide a four-point increase if a criminal activity involves *five or more participants* (i.e. five or more persons sharing criminal responsibility). Lacking five participants, however, the district court may nevertheless impose the same four-point increase if an activity is "otherwise extensive." Although the meaning of "otherwise extensive" is unclear, we must interpret that term in a manner that does no violence to the remainder of Section 3B1.1. Given the Section's five participant prong, it would be anomalous to conclude that the presence of five individuals—not all of whom are participants—warranted an increase. At the very least, Section 3B1.1's "otherwise extensive" prong demands a showing that an activity is the *functional equivalent* of an activity involving five or more participants.

The Application Notes most assuredly envision a scheme in which "otherwise extensive" activity operates as an alternative to activity involving five or more participants. We have difficulty, however, accepting the district court's conclusion that "otherwise extensive" activity can constitute some sort of lesser alternative. A criminal activity involving three participants and two outsiders simply cannot be equated to an activity involving *five or more participants*. To hold otherwise here would be to impose a four-point increase on a lesser showing than the Sentencing Guidelines expressly require. We refuse to render Section 3B1.1's five participant prong meaningless. We recognize that a criminal activity involving "only three participants but us[ing] the unknowing services of *many outsiders*, [can] be considered extensive." U.S.S.G. 3B1.1, *Application Note* 3 (emphasis added). However, if a head count is the sole basis for an "otherwise extensive" finding, the heads counted must add up to something greater than five.

This rule is in keeping with our prior statements concerning the scope of Section 3B1.1's "otherwise extensive" prong. In *United States v. Miller*, 962 F.2d 739, 745 (7th Cir.1992), we upheld a finding that criminal activity involving six individuals (2 participants and 4 outsiders) was extensive within the meaning of § 3B1.1. *See also United States v. Roberts*, 5 F.3d 365, 371 (9th Cir. 1993) (fraud involving three participants and four individual and two corporate outsiders was extensive); *United States v. Mergerson*, 4 F.3d 337, 348 (5th Cir.1993) (drug trafficking that involved four participants and "several girls" was extensive); *United States v. Savoie*, 985 F.2d 612, 616 (1st Cir.1993) (criminal scheme involving three participants and at least three outsiders was extensive). In *Miller*, we noted that the Guidelines themselves did not prescribe a "minimum number of persons needed to permit an enhancement." 962 F.2d at 745. Although we remain aware of this observation, it is not dispositive here. Today we take *Miller*'s holding a step further by prescribing that minimum number.[1] If a district court in-

---

1. *Miller* wrongly suggests that *DeCicco*, 899 F.2d   at 1537, held that the direction of one criminal

tends to rely solely upon the involvement of a given number of individuals to support a determination that criminal activity is "otherwise extensive," it must point to some combination of participants and outsiders equaling a number greater than five.

Although our holding might be characterized as Pickwickian by those who would defend a district court's discretion, the rule we embrace actually leaves that discretion largely intact. District courts are still free to examine factors in addition to a headcount to justify a finding that a given criminal activity is extensive. *See, e.g., United States v. McKenzie,* 922 F.2d 1323, 1329 (7th Cir.) (finding that cross-country trips and repeated transactions, in addition to several couriers, constituted extensive activity), *cert. denied,* —— U.S. ——, 112 S.Ct. 163, 116 L.Ed.2d 127 (1991); *United States v. Dietz,* 950 F.2d 50, 53 (1st Cir.1991) (urging courts to focus on the "totality of the circumstances, including not only the number of participants but also the width, breadth, scope, complexity and duration of the scheme"). *But cf. United States v. Boula,* 932 F.2d 651, 654 (7th Cir.1991) (suggesting that the "otherwise extensive" language applies primarily to the number of people involved in an operation). We do not wish to suggest that the "otherwise extensive" prong can *only* be satisfied given a minimum of five individuals. Our holding is instead much narrower; it simply reverses the district court's ruling that the five individuals here involved rendered Tai's extortion extensive.

■ In light of our prior ruling in this case, *Tai,* 994 F.2d at 1212–14, we find the government's attempts to direct our attention to extraneous factors in the record troublesome. That opinion made abundantly clear that this Court would not sift through the record to make the factual findings nec-

essary to support the district court's determination. *Tai,* 994 F.2d at 1212. The tack that we take on review hardly changes the second time around.[2]

The district court's determination was erroneous.[3] Its identification of the five individuals involved in Tai's extortionate activity does not, without more, support its conclusion that this activity was "otherwise extensive." On remand, the court should determine whether a two-point increase is appropriate under U.S.S.G. § 3B1.1(c), which authorizes an increase for a defendant's role as "an organizer, leader, manager or supervisor." Because we have determined that Tai's activity was not "otherwise extensive," this is the only increase that plausibly applies given any aggravating role that Tai may have played.

### III.

The district court also departed upward from the applicable criminal history guideline. Ordinarily, Tai would have been placed in Criminal History Category I. Given Tai's continued extortionate activities, however, the district court felt that this category failed to adequately reflect the risk that Tai would commit further offenses. Therefore, the district court increased Tai's criminal history score by three points, ultimately placing him in Criminal History Category III.

■ A district court has the authority to depart upward in defining a defendant's criminal history category. Section 4A1.3 provides that an upward departure "is warranted when the criminal history category significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." A district court's authority to depart is not, however, unfettered. A re-

---

participant was sufficient to support an "otherwise extensive" enhancement. 962 F.2d at 745. This is a misreading of *DeCicco*. *DeCicco* held that the direction of one criminally responsible individual was sufficient to support an enhancement for *leadership* under § 3B1.1(c). The "otherwise extensive" language, however, is contained only in subsections (a) and (b). To the extent that *Miller* misstates *DeCicco's* holding, we decline to follow it.

2. We also decline to revisit our prior determination concerning relevant conduct. *Tai,* 994 F.2d at 1212–13.

3. Because we hold the district court's determination erroneous, we need not address Tai's assertion that Rim's actions did not contribute to the extortion in a manner allowing Rim to be considered an outsider involved in the extortionate activity.

viewing court must examine both the reason for departing and the extent of the departure. *United States v. Connor*, 950 F.2d 1267, 1271 (7th Cir.1991). The district court's reason for departing is subject to *de novo* review, while the extent of the departure is examined deferentially. *Id.* *See also United States v. Gaddy*, 909 F.2d 196, 199 (7th Cir.1990).

■ In the present case, we have previously approved of the district court's reason for departing. Tai continued to extort old clients while incarcerated at MCC. This extortion occurred both before trial and after trial while Tai was awaiting sentencing. These activities, not otherwise factored into the sentencing decision, provide a justifiable ground for the district court's decision to depart. *Tai*, 994 F.2d at 1213–14 n. 4. *See also* U.S.S.G. § 4A1.3(e) (an upward departure may be appropriate in light of "prior similar adult criminal conduct not resulting in a criminal conviction"). Additionally, the district court relied on the fact that the extortion of Jung Lee occurred while Tai was on bond in state court on account of a battery charge. A crime committed while on release pending trial is also an appropriate basis for a departure. U.S.S.G. § 4A1.3. *See also United States v. Ferra*, 900 F.2d 1057, 1063 (7th Cir.1990), *cert. denied*, ── U.S. ──, 112 S.Ct. 1939, 118 L.Ed.2d 545 (1992). Indeed, Tai does not dispute the adequacy of the grounds for departure.

■ Instead, Tai challenges the *extent* of the departure that the district court took. He should not, he asserts, be treated as if he were the equivalent of a Category III Criminal History offender; other extortionists do not receive such lengthy sentences. The method that the district court used to calculate the extent of the departure is, in Tai's view, flawed. The district court purportedly

employed an improper analogy when it compared Tai's conduct to that involving a prior conviction. Instead, claims Tai, the district court ought not have departed at all in light of the fact that the MCC conduct was less serious than that of which he was convicted.

■ Because the extent of a given departure is a discretionary determination, we approve of the district court's decision to depart upward by awarding Tai three additional criminal history points. In *Ferra*, we recognized that "there cannot be rules for computing the amount of departure—for if it were possible to do this, the factors could be included in the guidelines, avoiding 'departures' altogether." 900 F.2d at 1062. Accordingly, *Ferra* recognized that a district judge need only "link the extent of departure to the structure of the guidelines." *Id.; see also Gaddy*, 909 F.2d at 199 (restating this command). In *Tai*, we tailored this general command to the specific facts of this case. We suggested that the district court needed to "assign some value to each ground for departure [based on] guideline provisions dealing with analogous factors." *Tai*, 994 F.2d at 1214. We felt that this mode of analysis would suffice to explain why the chosen ground for departure rendered "a defendant's criminal history more comparable to criminal histories found in a higher category than to those found in the defendant's category."[4] *Id.*

The district court adequately followed this mode of analysis on remand. It determined that convictions for the sort of activity that Tai practiced after arrest, and after the guilty verdict, ordinarily carry sentences in excess of a year and a month of incarceration. A prior sentence of this duration, in turn, results in the assignment of three additional criminal history points. U.S.S.G.

---

4. Tai, on his second appeal, misapprehends our previous instructions in *Tai*, 994 F.2d at 1214, as separate commands. In *Tai*, however, we stated that the assignment of a value to the ground for departure (by way of analogy to specific guideline provisions) was a means of *effecting* the necessary explanation justifying the extent of departure. That is, a district court's use of analogy reveals why a defendant is more comparable to other defendants in a higher criminal history category than the criminal history category a

straightforward application of the guidelines would otherwise place him in. Therefore, a district court need not make some separate determination that the sentence in fact imposed is similar to that of like offenders (i.e. here, other extortionists). It is the criminal history which must be comparable to that of defendants in a higher category—and the analogy method that we prescribed is a means of justifying the conclusion that it is.

§ 4A1.1(a). Therefore, the court felt the assignment of three additional criminal history points justified. This addition moved Tai from Criminal History Category I to Criminal History Category III and correspondingly increased his sentence.

We believe that move was appropriate. Criminal History Category I is "set for a first offender with the lowest risk of recidivism." U.S.S.G. § 4A1.3. Given Tai's conduct while incarcerated at MCC, the district court's conclusion that Category I failed to reflect either the seriousness of his conduct or the likelihood that he would repeat it was reasonable. By committing a crime from within prison walls, a defendant evinces a willingness to overcome difficulties in order to accomplish a criminal objective. In addition, the commission of crimes both after arrest and again after conviction (while awaiting sentencing no less) demonstrates an utter disregard for the criminal justice system and the processes of law. These factors militate in favor of a more serious criminal history category. *See, e.g., United States v. Franklin*, 902 F.2d 501, 509 (7th Cir.) (holding a two category departure appropriate where repeated conduct indicated that a defendant "apparently does not recognize the gravity of his wrongs"), *cert. denied*, 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990).

▪ Tai urges, however, that because this factor motivated the court to depart, it cannot again be considered in determining the *extent* of a departure. Such formalism runs counter to logic. If a court concludes that "X" justifies a criminal history increase, it is necessary for the court to examine the nature of "X" to determine the appropriate extent of that increase. We are aware of no authority suggesting otherwise. This hardly amounts to the prohibited "double counting" because a court is not using the same behavior to support two different aspects of sentencing. Instead, a court is analyzing the nature of the factor motivating its departure to justify the extent of that departure.

Comparing Tai's MCC conduct to a prior conviction was appropriate under the present circumstances. This analogy captures Tai's disrespect for the law in a way that other analogies might not. Repeat offenders ordinarily merit stiffer sentences. "A defendant with a record of prior criminal behavior is more culpable than a first offender and thus deserving of greater punishment." U.S.S.G. § 4A, *Introductory Commentary*. Tai argues vehemently that he is not a repeat offender because the MCC behavior did not occur after he had been sentenced. He did act, however, after he had been *convicted*. Despite the fact that the jury had returned a guilty verdict, Tai's criminal activities continued. The disrespect for the law that this behavior evinces is serious enough to warrant treatment as a repeat offender—whether or not Tai had previously labored under a criminal sentence. The district court's use of an analogy to a prior conviction was therefore reasonable.

▪ Tai himself prefers one of the analogies suggested by *Ferra*. *Ferra* approved of two or three alternative methods of computing an upward departure. 900 F.2d at 1062–64. One of those analogies proposed treating uncharged conduct as the subject of a simultaneous conviction. *Id.* at 1062. If this method were employed, Tai suggests that the Guidelines would mandate no departure (because the MCC extortion would result in a lower offense level than his actual conviction).[5] *Ferra* did not, however, mandate the only permissible methods for departure.[6] District courts are accorded a certain measure of latitude in furnishing analogies to justify the extent of an upward departure. *See United States v. Korno*, 986 F.2d 166, 169 (7th Cir.1993). The district court's choice must certainly be reasonable. *United States v. Jordan*, 890 F.2d 968, 975 (7th Cir.1989). And the district judge must provide a record explanation which ties a given

---

5. We express no opinion on the propriety of Tai's suggested approach.

6. *Ferra* does not control here for the additional reason that it dealt with conduct occurring while on release pending trial—not, like here, conduct

occurring after conviction. *Ferra*'s comment that "[a] crime committed while on release pending trial should not be treated more seriously" than a crime justifying a two-point increase thus loses force under the present circumstances.

enhancement to the structure of the Guidelines. *Ferra*, 900 F.2d at 1062; *United States v. Miller*, 874 F.2d 466, 471 (7th Cir. 1989). But the district court did these things in the instant case.[7]

District courts may rely on the provision authorizing three additional criminal history points for a prior conviction as a basis for an analogy to justify the extent of an upward departure. *See, e.g., United States v. Terry*, 930 F.2d 542, 545 (7th Cir.1991). Here, the district court's use of that analogy was reasonable. Tai's post-conviction conduct evinced sufficient disregard for the processes of the law to warrant the extent of the district court's chosen departure.

## IV.

The district court's use of a prior conviction to defend the extent of its departure was reasonable. Therefore, we affirm the district court's placement of Tai in Criminal History Category III. Tai's extortion, however, was not "otherwise extensive" within the meaning of § 3B1.1(a). We therefore vacate this aspect of the district court's sentence. On remand, the district court should determine whether a two-point increase for Tai's leadership role is appropriate under § 3B1.1(c).

For these reasons, the ruling of the district court is AFFIRMED IN PART and REVERSED IN PART.

---

**7.** Contrary to Tai's assertion, *Miller* does not require that a district court consider and reject each intermediate criminal history category. 874 F.2d at 470–71. The most that *Miller* requires is an examination of "the higher catego-ries [to] determine if the defendant closely resembles other defendants who belong in some other category." *Id.* The analogy employed by the district court in this instance adequately effected that command.